\IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAVEZ HOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-237-SPB |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN E. WETZEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Shavez Holden ("Plaintiff"), a former inmate at the State Correctional Institution at Forest ("SCI-Forest"), filed this civil action seeking redress for violations of his federal statutory and constitutional rights that allegedly occurred during his confinement at SCI-Forest. Among the named Defendants are more than three dozen individuals who were employed by the Pennsylvania Department of Corrections ("DOC") or otherwise affiliated with SCI-Forest during times relevant to this lawsuit.[1]

---

[1] Some individuals who were originally named as Defendants have since been terminated. By this Court's reading of the docket, the following Defendants remain: (1) JOHN E. **WETZEL**, Secretary of Corrections, PA D.O.C.; (2) MICHEAL **OVERMYER**, Superintendent, S.C.I. Forest; (3) L. **REEHER**, Superintendent's Assistant, S.C.I. Forest; (4) CAPTAIN **CARTER**, Security/Intelligence Gathering Capt., S.C.I. Forest; (5) D. **DICKEY**, Security/Intelligence Gathering Lt., S.C.I. Forest; (6) CAPTAIN **GILL**, R.H.U. Capt., S.C.I. Forest; (7) SGT. **KOPCHICK**, C.O. 2, S.C.I. Forest; (8) SGT. **KEMP**, C.O. 2, S.C.I. Forest; (9) T. **WILLIAMS**, Hearing Examiner, PA D.O.C.; (10) D. **SLATER**, C.O. 1, S.C.I. Forest; (11) **J. BEATTY**, C.O. 1, S.C.I. Forest;        (12) **T. BEATTY**, C.O. 1, S.C.I. Forest; (13) J. **SCHNECK**, Hearing Examiner, PA D.O.C.; (14) KERRI **CROSS**, Hearing Examiner, PA D.O.C.; (15) KIM **SMITH**, C.H.C.A., S.C.I. Forest; (16) DR. **SIMON**, L.P.M., S.C.I. Forest; (17) D. **DAVIS** (Security Lt./PREA); (18) "**BROCIOUS**" (c.o. 1); (19) JOSEPH H. **DUPONT** (Chief Hearing Examiner); (20) ZACHARY J. **MOSLAK**  (Chief Hearing Examiner); (21) DORINA **VARNER** (Chief Grievance Coordinator); (22) J. **HUTCHINS-OSWALT**,  Inmate Telephone Coordinator; (23) L. **FISCUS**, Hearing Examiner; (24) **KRAMER**, c.o.1; (25) D. **OBERLANDER**, Superintendent, SCI Forest; (26) **SMART COMMUNICATIONS INC**., Inmate Mail Processing Center; (27) J. **DOE**, Inmate Mail Inspector, SCI Forest; (28) J. **SAWTELLE**, Deputy Superintendent of Facility Management, SCI Forest; (29) I. **GUSTAFSON**, Correctional Classification and Program Manager, SCI Forest; (30) M. **BLICHA**, Major of the Guard, SCI Forest; (31) C. **CRISSMAN**, Psychology Staff, SCI Forest; (32) DR. **CAMACHO**, Psychiatrist, Pa. DOC/SCI Forest; (33) C.O.1 **SEIGWORTH**; (34) C.O.1. **SHICK**; (35) C.O.1 **WRIGHT**; (36) C.O.1 **MAHONEY**; (37) C.O.1  S.R. **BEST**; and (38) LT. **WALKER**.

Plaintiff's current claims are set forth in his Second Amended Complaint ("SAC"), ECF No. 11, as well as his first and second supplements to the SAC, filed respectively at ECF No. 29 (hereafter, "First Supplement") and ECF No. 78 (hereafter, "Second Supplement").[2] Collectively, this tri-part pleading contains more than 385 paragraphs and asserts numerous multi-part claims against some thirty-eight Defendants. Because the Court is writing only for the parties who are familiar with the content of Plaintiff's pleadings, the Court will discuss only those averments and claims that are germane to the analysis herein.

Broadly speaking, however, Plaintiff alleges that numerous corrections officials engaged or otherwise acquiesced in a campaign of harassment against him in retaliation for his involvement in filing administrative grievances, submitting requests to prison staff members, and initiating this lawsuit. Plaintiff has also brought claims alleging deliberate indifference to his serious medical needs, conditions of confinement that amounted to cruel and unusual punishment, denial of "fair and equal treatment," denial of due process, denial of access to the courts, and disability-related discrimination. Plaintiff's SAC addresses violations that allegedly occurred from May 2018 through August 2018. His First Supplement concerns alleged violations during the period of September 2018 through March 2019. His Second Supplement is directed at violations that allegedly occurred from May 2019 through July 2019, when Plaintiff was transferred to the State Correctional Institution at Greene ("SCI-Greene").

Pending before the Court are two motions to dismiss. One of the motions is brought on behalf of Dr. Camacho, a psychiatrist who performs contract work at SCI-Forest. ECF Nos. 61, 62. The second motion to dismiss is filed on behalf of various individuals employed by the DOC

---

[2] Plaintiff's Second Supplement was previously docketed at ECF No. 52; however, that entry was missing page 24. Consequently, it was refiled in its entirety at ECF No. 78. Whereas the parties may have referred to ECF No. 52 in their filings, this Court will cite to the document at ECF No. 78. Plaintiff's exhibits to the Second Supplement remain filed of record at ECF Nos. 52-1 through 52-4 and have been fully reviewed by this Court.

("DOC Defendants"). ECF Nos. 70, 71.  Plaintiff has responded to both motions.  ECF Nos. 74 and 76.  Dr. Camacho has replied to Plaintiff's response.  ECF No. 77.[3]  The matters in dispute have been sufficiently joined and are ripe for resolution.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 instructs that a pleading must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Fed. R. Civ. P. 8(a).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The U.S. Court of Appeals for the Third Circuit has articulated a three-step process for analyzing the sufficiency of a complaint:  first, the court must take note of the elements a plaintiff must plead in order to state a claim; second, the court should identify and disregard allegations in the complaint that are nothing more than conclusions; third, the court should assume the truth of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement for relief.  *See Palakovic v. Wetzel,* 854 F.3d 209, 220 (3d Cir. 2017).   Where a plaintiff is proceeding *pro se,*

---

[3] Camacho filed a supplemental brief in support of his motion on February 24, 2021, ECF No. 79, after the Plaintiff's Second Supplement was re-filed as a corrective entry at ECF No. 78.  Plaintiff then filed a response, ECF No. 80, and Camacho filed a reply, ECF No. 81.  The Court has reviewed these unsolicited filings as well.

the complaint must be construed liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Separate from its duty to adjudicate the Defendants' motions, this Court is independently obligated to review the sufficiency of Plaintiff's claims, as Plaintiff is proceeding *in forma pauperis*.  *See* 28 U.S.C. §1915(e).  The Court is directed to dismiss the case "at any time" if the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).  When conducting a review under 28 U.S.C. §1915(e)(2)(B)(ii), the court applies the same standard of review as it would apply under a traditional Rule 12(b)(6) analysis. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

## III. DISCUSSION

### A. The Motion by the DOC Defendants

The Court will first consider the motion to dismiss filed on behalf of DOC Defendants Wetzel, Overmyer, Reeher, Carter, Dickey, Gill, Kopchick, Kemp, Williams, Slater, J. Beatty, T. Beatty, Schneck, Cross, Smith, Simon, Davis, Brocious, Dupont, Moslak, Varner, Oberlander, Sawtelle, Gustafson, Blicha, Crissman, Seigworth, Shick, Wright, Mahoney, and Best ("DOC Defendants").  *See* ECF No. 70.  The motion seeks to dismiss claims asserted under both 42 U.S.C. §1983 and §202 of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12132.  Because the Court perceives that Plaintiff may also be attempting to state claims under §504 of the Rehabilitation Act, the Court will include that claim in the analysis that follows.

#### 1. *Plaintiff's Claims Under § 202 of the ADA and § 504 of the Rehabilitation Act*

Section 202 of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794(a).  The Third Circuit has instructed that "[t]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012)).  In order to maintain a claim under either statute, a plaintiff must demonstrate "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

Upon review of Plaintiff's operative pleading, it appears that he has asserted the following ADA/Rehabilitation Act claims:  (i) an alleged ADA violation by Fiscus in connection with Plaintiff's January 11, 2019 misconduct hearing, which resulted in Fiscus sentencing Plaintiff to 30 days segregated confinement in the RHU, ECF No. 29, ¶¶ 26-34, 77; and (ii) alleged violations of the ADA and/or the Rehabilitation Act by Defendants Carter, Walker, Kemp, Crissman, Oberlander, Gustafson, Blicha, Carter, Mahoney, Wright, Best, Schick, and Seigworth in connection with Plaintiff's confinement in the RHU between May 24, 2019 and July 23, 2019.  ECF No. 78, ¶¶118-121.

The DOC Defendants have moved to dismiss the ADA claims against Crissman and Kemp on the grounds that those Defendants were sued only in their individual capacities, and

Title II of the ADA does not allow for claims against individual defendants.  This argument is well-taken.

While the Third Circuit has not issued a precedential ruling on the matter, it has indicated in several non-precedential rulings that Title II of the ADA does not authorize suits against government agents in their individual capacities. See *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim"); *Matthews v. Pa. Dep't of Corr*., 613 F. App'x 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities"). Similarly, employees of federally funded entities are not subject to individual liability under the Rehabilitation Act.  See *Emerson v. Thiel Coll*., 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act."); *Doe v. DeJoy*, No. 5:19-CV-05885, 2020 WL 4382010, at *11 (E.D. Pa. July 31, 2020) (holding that there is no individual liability under the Rehabilitation act and citing authority).  Accordingly, Plaintiff cannot maintain his ADA and Rehabilitation Act claims against any of the aforementioned Defendants in their individual capacities.

Moreover, to the extent Plaintiff is essentially attempting to sue the DOC through official capacity claims against its officers, there is no viable claim for prospective injunctive relief in view of the fact that Plaintiff has been transferred to a different correctional institution.  At this

6

point, any past ADA or Rehabilitation Act violations that Plaintiff may have suffered at the hands of SCI-Forest officials are no longer an ongoing threat to him.  As a result, his claims for injunctive relief under the ADA are moot.  *See Johnson v. Tritt*, No. 1:18-CV-203, 2020 WL 1911538, at *12 (M.D. Pa. Apr. 20, 2020).

Finally, while official capacity claims for past violations of the ADA are theoretically actionable, *see Johnson,* 2020 WL 1911538, at *12 (noting that the Eleventh Amendment does not bar such claims), Plaintiff has failed to state such a claim here.  In essence, Plaintiff has provided nothing more than conclusory assertions that numerous DOC Defendants have engaged in disability-related discrimination by subjecting him to the conditions of the RHU and/or confining him in a dry cell and/or subjecting him to a "sham" investigation and/or allowing his transfer to a different prison.  Nowhere in his pleading does Plaintiff allege facts showing that he is a qualified individual with a disability, nor does he allege facts showing that he was excluded from a particular program or service (or was otherwise discriminated against) *because of* his disability rather than in spite of it.  His conclusory averments that the Defendants engaged in unlawful discrimination are not entitled to any presumption of truth.  *See Iqbal*, 556 U.S. at 681.  Accordingly, Plaintiff's claims under the ADA and the Rehabilitation Act will be dismissed.

    2.  *Plaintiff's Claims Under 42 U.S.C. §1983*

The majority of Plaintiff's claims are brought under 42 U.S.C. §1983, which provides a private right of action as against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  To establish a valid claim under this statute, a plaintiff must show that the defendant, while acting

under color of state law, violated one of his federal constitutional or statutory rights.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5 (1998)).  Next, a plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs."  *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).  Each defendant's personal involvement must be established because §1983 liability cannot be predicated merely on principles of *respondeat superior.  See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . .  § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  We will therefore begin by considering the alleged constitutional violations that the DOC Defendants seek to challenge (as well as those that appear to the Court to be legally untenable).  We will then consider whether, as to any remaining §1983 claims, Plaintiff has sufficiently alleged personal liability on the part of particular officials.

    a.   <u>Due Process Claims Based on RHU Confinement, Transfer, and Parole Eligibility</u>

Among the claims asserted in Plaintiff's pleading are due process claims arising out of various misconduct proceedings, as well as an investigation that culminated in Plaintiff's transfer to SCI-Greene.  Plaintiff's due process claims are set forth in all three parts of his operative pleading as follows.  In his SAC, he claims that he was subjected to five misconduct hearings which, in conjunction with a lengthy institutional lockdown, resulted in his confinement in the RHU between January 1 and January 17, 2018 and again from June 6, 2018 through September

14, 2018.  As set forth in the First Supplement to the SAC, Plaintiff was subjected to another misconduct hearing on January 11, 2019, which resulted in his confinement in the RHU until February 7, 2019.  In the Second Supplement to the SAC, Plaintiff states that he was placed in administrative confinement from May 24, 2019 until July 23, 2019, when he was transferred to SCI-Greene, ostensibly for security-related reasons.  In connection with these proceedings, Plaintiff alleges various procedural deficiencies such as fabricated charges, lack of fair notice concerning the nature of the misconduct charge, improper service of misconduct papers or related hearing forms, arbitrary denial of Plaintiff's requests to present witnesses, biased hearings, and "rubber stamp" reviews.  See generally ECF No. 11, ¶¶29, 50-53, 58, 64, 78, 88, 119, 128-135; ECF No. 29, ¶¶26-34, 59, 63-66; ECF No. 78, ¶¶17-39, 100-103, 106-109, 112, 118-120.

Plaintiff further avers that his transfer to SCI-Greene was the product of a "sham investigation" that concluded with the PRC's determination, based upon "fabricated" evidence, that Plaintiff should be transferred from SCI-Forest because of an unspecified security assessment. ECF No. 78, ¶¶17-19, 100-109, 118-120.  Plaintiff considers the transfer to be retaliatory because it resulted in the interruption of certain mandatory programming that ultimately delayed his eligibility for parole for a period of 8 to 10 months.  Plaintiff contends that he was never informed of the specific reason for the investigation or the specific security assessment that was cited as the reason for his transfer; thus, he was unable to fairly challenge the decision.

It appears from Plaintiff's averments that he is putatively asserting both procedural and substantive due process claims. To the extent Plaintiff is asserting substantive due process violations, however, the claims are barred by the "more specific provision" rule.  Under this rule,

a plaintiff may not proceed under a substantive due process theory where the alleged violation is addressed by a more specific constitutional provision.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010).   In this case, Plaintiff's substantive due process claims appear to be predicated upon alleged procedural deficiencies, and/or unconstitutional conditions of confinement in the RHU, and/or retaliation that he endured from RHU staff members. Accordingly, Plaintiff's substantive due process claims will be dismissed as redundant.  *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447-48 (3d Cir. 2020) (State death row inmate's substantive due process claim based on prison officials' subjecting him to solitary confinement for 33 years challenged same conduct as his Eighth Amendment claim, and thus was barred under more-specific-provision rule, even if officials' conduct shocked conscience irrespective of any procedural safeguards, where there were no distinct facts that applied only to his substantive due process claim.); *Willard v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 525 F. App'x 217, 219 n.4 (3d Cir. 2013 ) (affirming dismissal of substantive due process claim, pursuant to the "more-specific-provision" rule, where substantive due process claim sought to redress the same harm alleged in plaintiff's procedural due process claim); *Alvarez v. Ebbert*, No. 1:18-CV-1964, 2019 WL 2762964, at *9 (M.D. Pa. July 2, 2019) ("To the extent that Alvarez is raising a substantive due process claim, his allegations are clearly premised on First Amendment violations, as set forth above. Thus, any such substantive due process claims will be dismissed as foreclosed under 'the more-specific-provision rule.'") (citation omitted).

We turn, then to Plaintiff's procedural due process claims.  "To prevail on a procedural due process claim, a plaintiff must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns*

*v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  In evaluating a procedural due process claim, the court's "first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)).  If the interest at stake is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In situations where a protected liberty interest is at stake, as (for example) where a disciplinary proceeding results in the loss of good-time credits, due process requires that prisoners receive certain protections, including:  "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  Moreover, there must be "some evidence" to support the decision of the hearing examiner.  *Id.* at 457.  This standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 889 F.2d 500, 501-02 (3d Cir. 1989).

Here, the DOC Defendants move to dismiss Plaintiff's claims solely on the first element, as they argue that Plaintiff has failed to allege the deprivation of a constitutionally protected interest.  As noted, Plaintiff appears to be alleging the deprivation of a protected liberty interest based upon the conditions of his disciplinary and/or administrative custody in the RHU, his transfer, and or the collateral consequences relative to parole.

It is well established that the conditions of an inmate's confinement will not implicate a protected liberty interest unless the confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Court is also cognizant that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding that seven-month confinement in SHU based on false reports did not implicate a protected liberty interest); *see also Islaam v. Kubicki*, No. 20-1917, 2020 WL 7233089, at *2 (3d Cir. Dec. 8, 2020) (federal prisoner failed to state plausible due process claim against correctional officer for placing him in segregated housing unit for seven months based on false disciplinary reports, absent allegations that prisoner's segregation imposed atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life); *Proctor v. James*, 811 F. App'x 125, 129 (3d Cir. 2020) (affirming the dismissal of due process claims that stemmed from inmate's disciplinary sanction of 60 days' confinement in the RHU where plaintiff failed to allege conditions that involved an atypical and significant hardship sufficient to create a protected liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir.1997) (placement in administrative segregation for fifteen months was not an atypical and significant hardship, and did not amount to cruel and unusual punishment).

In this case, however, Plaintiff has alleged that the conditions of his confinement in the RHU and, at times, a "dry cell," involved hardships that were significant and atypical relative to normal prison life, particularly in light of his mental health problems.  ECF No. 78, ¶112.  The Defendants have not squarely addressed these allegations in their motion and supporting brief,

and the Court is unable to fully evaluate this claim without the benefit of a more complete factual record.

With respect to the second element of his due process claim, Plaintiff has alleged that he was deprived of certain procedural safeguards, such as the lack of notice concerning the nature of the misconduct charges and the arbitrary denial of witnesses.  Again, the DOC Defendants have not addressed these allegations in their brief, and the present record does not permit an adequate evaluation of this claim under the Court's §1915(e)(2) review authority.  The parties will have an opportunity during discovery to establish an evidentiary record concerning the length and conditions of Plaintiff's confinement in the RHU, and any other factors that may bear on his assertion of a protected liberty interest.  In the event Plaintiff cannot ultimately prove "atypical and significant hardships" or that he was subjected to constitutionally relevant procedural deprivations, the DOC Defendants will have an opportunity to renew their challenges to this claim at the summary judgment stage.  For present purposes, however, the Court will permit this claim to proceed.

On the other hand, insofar as Plaintiff predicates his due process claim on his transfer to SCI-Greene and the temporary delay of his mandatory programming, the Court agrees that he has not alleged the deprivation of a protected "liberty" interest. It is well established that a state has "broad authority" to confine an inmate in any of its institutions and, concomitantly, "an inmate does not have the right to 'be placed in any particular prison.'"  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).  In fact, "courts recognize that a state's authority to place inmates anywhere within the prison system is among 'a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.'" *Id.* (quoting

*Meachum*, 427 U.S. at 225).  "Consequently, custodial personnel do not infringe an inmate's liberty interests by placing [the inmate] in one custodial facility rather than another."  *Id*. (citing *Meachum*, 427 U.S. at 225).  This aspect of Plaintiff's due process claim will be dismissed.

Plaintiff also cannot plausibly predicate his due process claim on the fact that the transfer may have delayed his eligibility for parole due to the interruption of his mandatory prison programming.  Under Pennsylvania law, an inmate does not obtain a liberty interest in parole until the Parole Board has issued an order granting parole and the prisoner has signed an acknowledgement of the parole conditions.  *Williams v. Wetzel*, 827 F. App'x 158, 161 (3d Cir. 2020) (granting summary judgment on prisoner's due process claim where prisoner "provided no evidence that his parole order was executed and, therefore, failed to create a genuine issue a to a liberty interest in his release").  It is true, as Plaintiff points out, that the U.S. Court of Appeals for the Third Circuit has recognized an inmate's fundamental liberty interest in his *eligibility* for parole.  *See Berry v. United States*, 412 F.2d 189, 192-93 (3d Cir. 1969) (holding that failure to inform defendant, prior to entry of guilty plea on narcotics charges, that he would be ineligible for parole vitiated plea); *see also Disco v. Thompson*, No. 2:19-CV-00130, 2020 WL 3980655, at *6 (W.D. Pa. Apr. 9, 2020) (recognizing protected interest in parole eligibility), *report and recommendation adopted*, No. 2:19-CV-00130, 2020 WL 2059745 (W.D. Pa. Apr. 29, 2020).  But in this case, Plaintiff's eligibility for parole was not eliminated; instead, it was merely delayed by 8 to 10 months as the collateral consequence of his transfer to another correctional institution for security related reasons.  In this Court's view, the delay occasioned by Plaintiff's transfer did not amount to the deprivation of a protected "liberty" interest.  *See, e.g., Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (holding that prisoner did not have a protected liberty interest that prison officials could have infringed because his

misconduct determinations, his resulting time in the RHU, and the ensuing rescission of his parole did not, either alone or in combination, create atypical and significant hardship in relation to the ordinary incidents of prison life); *Mutschler v. Tritt*, No. 3:14-CV-1611, 2018 WL 4184320, at *4–6 (M.D. Pa. Aug. 31, 2018) (dismissing prisoner's claim that his liberty interests were infringed when the issuance of a misconduct charge prevented him from being considered for parole), *aff'd*, 765 F. App'x 653 (3d Cir. 2019).  Plaintiff's due process claim will be dismissed to the extent it is premised upon Plaintiff's transfer to SCI-Greene and the resulting interruption of any mandatory prison programs.

      b.  <ins>Due Process Claim Based on the Destruction of Property</ins>

In their Rule 12(b)(6) motion, the DOC Defendants request dismissal of a procedural due process claim arising out of the destruction of Plaintiff's personal property.  The underlying allegation is that "SCI Forest officials lost $100.00 worth of the plaintiff's commissary [items] and defendant S.R. Best is responsible for the plaintiff being denied the opportunity to seek redress by discarding the plaintiff's grievance filing regarding the same."  ECF No. 29, ¶73.

The Court agrees that, to the extent Plaintiff is asserting a due process claim based on this incident, the claim is deficient and must be dismissed. The Supreme Court has stated that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Moreover, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

In his pleading, Plaintiff avers that the Defendants' conduct essentially rendered the inmate grievance system unavailable to him.  He therefore insists that the system was inadequate to remedy the loss of his personal property.  But even if we credit this allegation, it does not save his due process claim because Plaintiff still had adequate legal recourse in state court.  *See Harris v. Wetzel*, 822 F. App'x 128, 131 (3d Cir. 2020) ("The Supreme Court has recognized that state tort actions provide an adequate post deprivation remedy beyond the grievance system.") (citing *Hudson*, 468 U.S. at 534-35); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property by state officials); *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (stating that "[a]dequate remedies were available" through the administrative grievance system and, "to the ... extent Crosby is dissatisfied with the outcome of the administrative process, he may still file a state court tort action") (citation omitted); *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008) (stating that Pennsylvania prisoner had a meaningful post-deprivation remedy regarding the loss of his property in the form of this grievance system and, "[f]urthermore, [he] could also have pursued a state tort suit for conversion of property.") (citation omitted); *Morales v. Wetzel*, No. 20-CV-0439, 2021 WL 534462, at *4 (E.D. Pa. Feb. 12, 2021) ("The Pennsylvania Tort Claims Act provides a sufficient remedy for intentional deprivations of property by state employees."). Therefore, even under a liberal interpretation, Plaintiff's complaint fails to state a plausible procedural due process deprivation arising out of the loss or theft of his personal property.  This claim will therefore be dismissed.

c.   Due Process Claim Based on Interference with Plaintiff's Attempts to File Grievances

In addition, to the extent Plaintiff is attempting to allege a due process violation based solely on Defendant Best's alleged interference with Plaintiff's attempt to utilize SCI-Forest's grievance system, no basis for relief has been stated.  It is well established that prisoners do not have any constitutionally protected interest in the administrative grievance process.  *See Proctor v. James*, 811 F. App'x 125, 129 (3d Cir. 2020) ("To the extent that [the plaintiff inmate] alleged due process claims based on the PRC defendants' handling of his grievances and appeals, those too fail because access to prison grievance procedures is not constitutionally required.") (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")); *Iwanicki v. Pennsylvania Dep't of Corr.*, 582 Fed. Appx. 75, 81 (3d Cir. 2014) ("Violations of [prison] grievance procedures do not give rise to a cognizable claim under section 1983.") (citation omitted).  Accordingly, no such claim can proceed in this litigation.

d.   Equal Protection

The DOC Defendants move to dismiss Plaintiff's "Fair and Equal Treatment" claims, which Defendants construe as claims asserting violations of the Equal Protection Clause of the Fourteenth Amendment.  As set forth in the SAC, Plaintiff alleges that he was subject to "fair and equal treatment violations" arising out of:  his placement in a "dry cell," ECF No. 11, ¶139; his misconduct and grievance proceedings, *id.*, ¶¶140-141, 144; and various acts of retaliation, *id.*, ¶¶142-143, 178.  The DOC Defendants argue that Plaintiff has failed to allege any facts that would support his claim of unlawful discrimination.  The Court agrees.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)).  In his response to the DOC Defendant's motion, Plaintiff clarifies that he is

attempting to assert an Equal Protection violation under a "class of one" theory.  To state a

plausible claim under this theory, "a plaintiff must allege that (1) the defendant treated him

differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was

no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224,

243 (3d Cir. 2008).  Persons are "similarly situated" for equal protection purposes when they are

alike "in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)

(quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).

  Here, Plaintiff has failed to plead sufficient factual content to show that he was treated

differently from others who were "similarly situated" to him in "all relevant aspects."  To the

extent Plaintiff even mentions similarly situated inmates in his pleading, he offers only

conclusory averments of their existence and that they were treated more favorably.  *See, e.g*.,

ECF No. 11, ¶139 (stating that Plaintiff "suffered fair and equal treatment violations when he

was subjected to the tortuous conditions of the 'dry cell[,]' . . . whereas [s]imilarly situated

inmates receive misconduct sanctions only"); *id*., ¶144 ("The plaintiff suffered fair and equal

treatment violations by being subjected to a sham grievance process and administrative review.

Similarly situated inmates are said to have their issue reviewed and investigated accordingly.").

  Plaintiff's conclusory averments of disparate treatment are insufficient to state a plausible

equal protection violation.  *See Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 F. App'x

46, 49 (3d Cir. 2019) (dismissing plaintiff's "class of one" equal protection claim where the

plaintiff identified only one comparator business in its pleading and failed to allege details as to

how the comparator was a "similarly situated" entity; thus, court could not conclude that comparator business was alike "in all relevant aspects"); *see also Benjamin v. Clark*, No. 1:20-CV-1991, 2021 WL 391987, at *7 (M.D. Pa. Feb. 4, 2021) ("When alleging the existence of similarly situated individuals, plaintiffs 'cannot use allegations ... that amount to nothing more than conclusory, boilerplate language to show that he may be entitled to relief,' and 'bald assertion[s] that other[s] ... were treated in a dissimilar manner' will not suffice.") (citing *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005)) (alterations and ellipses in the original).

In any event, Plaintiff's assertion that he was uniquely discriminated against (as the sole member of a "class of one") is belied by his averments about the conditions in the RHU, which suggests the universally poor treatment of inmates in that unit.  *See* ECF No. 78, ¶112.  Based on these infirmities, the Equal Protection claims in the SAC will be dismissed.[4]

    e.  <u>Denial of Access to Courts</u>

The DOC Defendants also request the dismissal of Plaintiff's §1983 claim asserting violations of his right to access the courts.  *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (recognizing that prisoners retain a right of access to the courts under the First and Fourteenth Amendments). The gravamen of this claim is Defendants' alleged misconduct in relation to Plaintiff's disciplinary hearings and grievance proceedings, as well as the alleged destruction of certain video footage.  *See* ECF No. 11, ¶¶ 154-155.

---

[4] The Court notes that Plaintiff has asserted a separate claim in his First Supplement against Defendant Hutchins-Oswalt, the Inmate Telephone Coordinator at SCI-Forest, for alleged "Religious Bias; Right to Communicate; [and] Fair and Equal Treatment" violations.  ECF No. 29, ¶¶74-76.  Defendant Hutchins-Oswalt, who is represented by separate counsel, previously filed an answer denying these allegations.  *See* ECF No. 39.  Thus, the claim against Hutchins-Oswalt will proceed for present purposes, subject to any challenges this Defendant might raise at the Rule 56 stage.

"Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Here, the DOC Defendants argue -- and this Court agrees -- that Plaintiff has failed to allege any "actual injury" arising from his inability to access the courts. In his response to the Defendants' motion, Plaintiff represents that he prefers these allegations be construed as part of the alleged "campaign of harassment" that was waged against him during his confinement at SCI-Forest. Thus, to the extent Plaintiff pled a First or Fourteenth Amendment claim predicated upon the alleged denial of his access to the courts, such claim is both legally deficient and deemed to be abandoned. The putative claim will therefore be dismissed.

f. <u>Fourth Amendment Claim Arising From Repeat Body Scans</u>

The DOC Defendants also seek dismissal of Plaintiff's Fourth Amendment claim relating to the conduct of Corrections Officer "J. Beatty." As set forth in his First Supplement to the SAC, Plaintiff claims that he "suffered an unlawfully intrusive search by Defendant J. Beatty's forcing [him] through numerous body scans although similarly situated inmates are only placed through one (1) time." ECF No. 29, ¶70.

The DOC Defendants perceive that this cause of action is more appropriately analyzed as an "equal protection" claim. To that end, they argue, the claim should be dismissed because it fails to state a plausible violation of Plaintiff's equal protection rights. Plaintiff represents in his

20

brief that he "prefers this claim to be a continuation of the 'campaign of harassment' waged against [him] for filing grievances and suits."  ECF No. 74 at 17.  Because Plaintiff has abandoned any putative Fourth Amendment or Equal Protection claims predicated upon J. Beatty's alleged conduct, those claims will be dismissed.  The Court will construe Plaintiff's allegations about the forced body scans as part of his First Amendment retaliation claim.

       g.   Claims Arising Out of the Confiscation of Plaintiff's Legal Materials

      Pursuant to its authority under 28 U.S.C. §1915(e)(2), the Court will also dismiss Plaintiff's Fourth Amendment claim predicated upon the alleged confiscation of Plaintiff's "legal property."  Plaintiff avers that Defendant Kramer, at the direction of Defendant Carter, confiscated eighty-six (86) pages of legal materials.  ECF No. 29, ¶71.  This allegation fails to state a plausible Fourth Amendment violation inasmuch as "prisoners have no legitimate expectation of privacy ... and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. at 530; *see also Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells.") (citing *Hudson*, 468 U.S. at 529); *Morales v. Wetzel*, No. 20-CV-0439, 2021 WL 534462, at *2 (E.D. Pa. Feb. 12, 2021) (dismissing inmate's Fourth Amendment claim that was based on the seizure of his property); *Parrish v. Corrections Emergency Response Team*, Civ. A. No. 18-4871, 2019 WL 1596337, at *3 (E.D. Pa. Apr. 12, 2019) (concluding prisoner plaintiff failed to state claim for a violation of the Fourth Amendment where plaintiff alleged that CERT members destroyed and defaced personal property during the process of transferring plaintiff from SCI Graterford to SCI Phoenix).  Plaintiff's Fourth Amendment claim against Defendants Kramer and Carter, predicated upon the destruction of Plaintiff's "legal property" will be dismissed with prejudice.

To the extent that Plaintiff is asserting a procedural due process claim in connection with this incident, such claim also is dismissed.  For the reasons discussed above, Plaintiff has an adequate remedy for redress of the loss of his property through the state court system.  *See Harris*, 822 F. App'x at 131;  *Shakur*, 421 F. App'x at 135;  *Crosby*, 465 F. App'x at 172;  *Mattis*, 260 F. App'x at 461;  *Morales*, 2021 WL 534462, at *4.

Plaintiff also appears to be asserting a First Amendment retaliation claim in reference to the confiscation of his legal materials. Plaintiff alleges that the confiscated materials related to his various complaints against SCI-Forest officials.  For present purposes, the Court will allow this aspect of Plaintiff's claim to proceed.  At this still relatively early stage of the proceedings, a rational trier of fact could plausibly infer a retaliatory motive based upon protected First Amendment activity.

### h.   Dismissal of Official Capacity Claims for Monetary Damages

Pursuant to its authority under §1915(e)(2)(B), the Court will also dismiss all of Plaintiff's §1983 claims for damages against the DOC Defendants to the extent those Defendants are being sued in their official capacities. The Eleventh Amendment to the Constitution grants to the states immunity from suit in federal court by private parties. U.S. Const. amend. XI.  The Commonwealth has not waived its Eleventh Amendment immunity.  *See* 42 Pa. Cons. Stat. §8521-22.  This immunity applies to lawsuits brought under 42 U.S.C. §1983 against state employees in their official capacities, as those types of claims are essentially claims against the State itself. *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003) (noting that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages."); *see also Pettis v. Everhart*, No. 3:19-CV-1308, 2020 WL 5548719, at *1 n.1 (M.D. Pa. Sept. 16, 2020) (considering the plaintiff's official-capacity claims

and the issue of Eleventh Amendment immunity *sua sponte*); *McGee v. Thomas*, No. CV 16-5501, 2018 WL 347578, at *5 n. 10 (E.D. Pa. Jan. 10, 2018) (considering Eleventh Amendment immunity *sua sponte*).

Because Plaintiff's monetary claims against the DOC Defendants in their official capacities are barred by the Eleventh Amendment, those claims will be dismissed without leave for further amendment.

### i.   Defendants' Personal Involvement in the Alleged Wrongdoing

Based upon the foregoing analysis, the Court perceives that the following §1983 claims remain against the DOC Defendants:

- Procedural Due Process claims arising out of Plaintiff's confinement in disciplinary and/or administrative custody in the RHU, ECF No. 11 at ¶¶128-135; ECF No. 29 at ¶¶ 63-66; ECF No. 78 at ¶¶118-123, 128-135;

- Eighth Amendment violations arising out of the physical conditions of Plaintiff's confinement in the "dry cell" and/or in the RHU, ECF No. 11 at 33-34; ECF No. 78 at ¶¶119-123;

- Eighth Amendment violations arising out of a "campaign of harassment," ECF No. 11, ¶178; ECF No. 78 ¶¶119-123;

- Eighth Amendment violations arising out of Defendants' deliberate indifference to Plaintiff's serious medical or psychiatric needs in relation to his confinement in a "dry cell" and/or confinement in the RHU, ECF No. 11 , ¶¶145-148, ECF No. 29 at ¶77; ECF No. 78 at ¶¶119-123; and,

- Retaliation in sundry forms, based upon Plaintiff's engagement in constitutionally protected activities, ECF No. 11 at ¶¶ 149-153, ECF No. 29 at ¶¶67-69, id. at ¶76; ECF No. 78 at ¶¶117-123.

With these claims in mind, the Court will examine the DOC Defendants' challenges related to the alleged lack of personal involvement of certain officials.  As discussed, a §1983 plaintiff must plead that each government-official defendant, through the official's own individual actions, violated the Constitution.  *Iqbal*, 556 U.S. at 676.

There are generally two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, a supervisor's personal involvement may be shown through personal direction, actual participation in the alleged misconduct, or contemporaneous knowledge of and acquiescence in the alleged misconduct. *Rode*, 845 F.2d at 1207; *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir, 1988). The allegations of personal involvement must be particularized, however. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845, F.2d at 1207).

Second, for individuals with policymaking authority, the requisite personal involvement may be shown by demonstrating that the defendant acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation. *See Cirino v. Cty. of Lehigh, Pa.*, No. CV 18-03565, 2019 WL 2515840, at *2 (E.D. Pa. June 18, 2019) (citing authority); *see A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) ([L]iability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.") (internal quotation marks and citation omitted). A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute ... the force of law." *Id.* at 691. A plaintiff "must identify a custom or policy ... and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to

municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory.") (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Here, the DOC Defendants assert that no personal involvement in wrongdoing has been alleged by Plaintiff with respect to Defendants Wetzel, Overmyer, Oberlander, Sawtelle, Reeher, Gill, Schneck, Cross, Dupont, Moslak, Varner, Smith, Simon, Williams, and Brocious.[5]  The Court considers the allegations against each of these Defendants in turn.

### 1.  Claims that are Allegedly Predicated Solely on *Respondeat Superior*

Defendants request the dismissal of claims against Wetzel, Overmyer, Oberlander, and Sawtelle on the ground that these individuals are being sued solely on the basis of their supervisory roles at SCI-Forest. Wetzel is the Secretary of the DOC.  Overmyer is the former Superintendent of SCI-Forest.  Oberlander is the current Superintendent of SCI-Forest, and Sawtelle is the Deputy Superintendent.

<u>Wetzel</u>

With respect to Defendant Wetzel, the Court perceives that Plaintiff is alleging certain deficiencies in official DOC policies -- specifically, the Inmate Discipline policy (DOC ADM-801) and Administrative Custody policy (DOC ADM-802) -- that were promulgated by Wetzel in his capacity as Secretary of the DOC.  *See* ECF No. 11, ¶¶101-108, ECF No. 29, ¶63. Plaintiff also asserts that Wetzel failed to train DOC staff regarding the lawful implementation of DOC ADM-801 and, as a result, the policy has been enforced in an arbitrary and unconstitutional

---

[5] The caption to Section (III)(A) of Defendants' brief suggests that they are also challenging the personal involvement of Gustafson and Blicha; however, the DOC Defendants do not specifically address the claims against these two Defendants in their brief.  The Court will therefore defer any analysis of Gustafson's and Blicha's personal liability to a later stage of these proceedings.

manner.  ECF No. 11, ¶107.  Insofar as Plaintiff claims that his due process rights were violated as a result of Wetzel's promulgation of constitutionally deficient policies and failure to train staff on those same policies, the allegations are sufficient to establish Wetzel's personal involvement in the alleged wrongdoing.

Overmyer

Plaintiff's allegations against Defendant Overmyer are found in his SAC and the First Supplement thereto.  In relevant part, Plaintiff alleges that Overmyer authorized or established a "de facto" policy of "grinding up" inmates by using the dry cell for improper disciplinary purposes.  ECF No. 11, ¶39.  Plaintiff avers that, through prior grievances, requests to staff members, and civil litigation filed by other inmates, Overmyer was made aware of staff members' improper use of, and the "cruel and unusual" conditions of, the dry cell. *Id.*   Despite this knowledge, it is alleged, Overmyer took no steps to improve the conditions or train his subordinates on the proper use of the dry cell.  *Id.*  Moreover, Overmyer approved Defendant Dickey's placement of Plaintiff in the dry cell on May 21, 2018, and that placement allegedly resulted in harm to Plaintiff.  ECF No. 11, ¶¶ 27, 35.

The Court finds that these allegations are sufficient for present purposes to establish a plausible basis for Overmyer's liability relative to Plaintiff's exposure to allegedly unconstitutional conditions in the dry cell at SCI-Forest.  Construed in the light most favorable to Plaintiff, the foregoing allegations, if proven, could establish that Overmyer had prior knowledge of, and was deliberately indifferent to, conditions in the dry cell that fell below constitutionally acceptable standards, resulting in foreseeable injury to the Plaintiff.  *See Cirino, supra*, 2019 WL 2515840, at *2.  Accordingly, Plaintiff's Eighth Amendment claim against Overmyer arising out of his placement in the dry cell may proceed.

Giving Plaintiff's pleading the benefit of a liberal construction, he also appears to allege that Overmyer was aware of, and acquiesced in, a pattern of retaliation within SCI-Forest, as well as a pattern or practice of allowing hearing examiners to conduct unfair disciplinary hearings where, among other things, they regularly and arbitrarily denied inmate requests for witnesses.  See, e.g., ECF No. 11, ¶¶ 110-111, 179-180.  To the extent Plaintiff is alleging that Overmyer sanctioned a "de facto" policy of acquiescing in constitutional violations and that he was injured as the result of such policy, Plaintiff has plausibly alleged Overmyer's personal involvement in the alleged wrongdoing.  The Court will permit him to pursue these claims in discovery.[6]

### Oberlander

Plaintiff's averments against Defendant Oberlander are set forth in the First and Second Supplement to the SAC.  Upon review of those averments, the Court agrees with the DOC Defendants that Plaintiff has not plausibly stated any actionable involvement on Oberlander's part relative to Plaintiff's alleged constitutional injuries.

In the Second Supplement, Plaintiff avers that Oberlander "is responsible/liable for the deprivations of the plaintiffs [sic] rights relating to the AC placement, confinement, PRC's vague rationale to support the decision to transfer, and ultimate retaliatory transfer."  ECF No. 78, ¶102.

---

[6] The Court cautions, however, that, to the extent Plaintiff predicates Overmyer's alleged "awareness and acquiescence" on Overmyer's denial of misconduct or grievance appeals, such evidence is insufficient to establish the Defendant's personal responsibility for the alleged violation.  *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998) (a defendant's failure, after being informed of the violation through the filing of grievances, reports, or appeals, to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Powell v. McKeown*, No. 1:20-CV-348, 2020 WL 4530727, at *10-12 (M.D. Pa. Aug. 6, 2020) (dismissing due process claims against superintendent and chief hearing examiners for lack of personal involvement; court noting that defendants' failure to respond favorably to Plaintiff's appeals from the disciplinary proceedings was insufficient to hold them liable under § 1983).

It is clear from the Second Supplement, however, that Plaintiff is seeking to hold Oberlander liable based on the fact that Oberlander "reviewed and approved" Plaintiff's confinement in administrative custody "and rejected the plaintiff's arguments to object on appeal." *Id.* Such conduct is insufficient to demonstrate Oberlander's personal involvement in the complained-of conduct. *See Rode*, 845 F.2d at 1207-08 (a defendant's failure, after being informed of the violation through the filing of grievances, reports, or appeals, to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement).

Plaintiff also blames Oberlander for the fact that Defendant Reeher removed grievance boxes from the general population units and allowed lock boxes in the chow halls to go unlabeled, in contravention of DOC policy. ECF No. 29, ¶54-56. Plaintiff baldly states, without factual support, that Oberlander is at fault for this conduct. Even if Plaintiff could plausibly establish a constitutional violation relative to the issues with the lock boxes, his complaint against Oberlander depends entirely on *respondeat superior* liability, which is insufficient under §1983.

Plaintiff's remaining averments are similarly insufficient to establish Oberlander's liability. He states, in conclusory fashion, that Oberlander (and numerous other officials) are at "fault" for not separating Seigworth from Plaintiff, ECF No. 78, ¶61, that Oberlander "should not have allowed the plaintiff to be subjected to the ongoing harassment in retaliation for exercising protected speech," *id*. ¶104, and that Oberlander's "non-action . . . in response to his becoming aware of the actions of the defendants confers liability upon him for the constitutional violations occurring after his becoming informed" of the unspecified prior offenses, *id*. ¶122. Again, in the absence of more specific factual averments, Plaintiff has only pled a basis for

*respondeat superior* liability against Oberlander.  As no plausible basis for Oberlander's personal liability has been pleaded, he will be dismissed from this action.

Sawtelle

Defendant Sawtelle was the Deputy Superintendent at SCI-Forest and a member of the Program Review Committee during Plaintiff's confinement at SCI-Forest.  Plaintiff avers that Sawtelle, as a member of the PRC, was responsible for due process deprivations that occurred relative to his placement in administrative custody in May 2019.  ECF No. 78, ¶101.  Because the PRC is the relevant decision-making body charged with making administrative custody placements pursuant to DOC ADM-802, Plaintiff has pled a plausible basis for Sawtelle's direct involvement in the alleged violation of his rights.  Accordingly, Plaintiff's claim against Sawtelle can proceed at this time.

### 2. Defendants Whose Involvement is Based Upon Administrative Appeals, Grievances, and Requests to Staff Members

The DOC Defendants argue that Defendants Reeher, Gill, Schneck, Cross, Dupont, Moslak, and Varner should be dismissed from this lawsuit because their involvement was limited to grievances, misconducts, and responding to inmate's requests to staff.  A defendant's involvement in merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege a constitutional violation. *See Williams v. Ferdark*o, 807 F. App'x 177, 180 (3d Cir. 2020).  Thus, a defendant's involvement (or inaction) relative to misconduct and administrative appeals or grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam); *Jones v. Sorbu*, No. 20-CV-5270, 2021 WL 398494, at *6 (E.D. Pa. Feb. 4,

2021) (facts alleged by plaintiff about his prison grievances did not give rise to a plausible basis for a constitutional claim).

### Reeher

Defendant Reeher was the Superintendent's Assistant and the grievance coordinator at SCI-Forest during Plaintiff's confinement there.  ECF No. 11, ¶4.  Plaintiff's complaints about Reeher relate to her failure to respond to a June 23, 2018 grievance and a July 25, 2018 "request to staff," ECF No. 11, ¶¶45-46 and ¶77, her involvement in forwarding or intercepting Plaintiff's "requests to staff" *id*., ¶¶69-70, ¶¶72-73, her involvement in creating confusion by utilizing two separate numbers in a particular grievance response, *id*., ¶74, her removal of grievance boxes from all general population units, ECF No. 29, ¶54-57; her involvement in allowing grievance lock boxes to go unlabeled, *id*., her failure to retrieve grievance box contents on a daily basis, *id*. ¶57, and her failure to inform "proper" SCI Forest officials of the need to keep certain staff members away from Plaintiff, after becoming aware of their retaliatory conduct through grievances that Plaintiff had filed.  ECF No. 52, ¶123.  None of this alleged conduct is sufficient to establish Reeher's personal involvement in the remaining actionable claims.  Accordingly, Reeher will be dismissed from this action.

### Varner

Defendant Varner is the Chief Grievance Coordinator for the Pennsylvania DOC.  ECF No. 11, ¶20.  According to the SAC, Varner falsely claimed that Grievance Numbers 756935 and 754454 were investigated when, in fact, Varner only conversed with the accusing staff member and never interviewed the relevant witnesses.  *Id*. ¶116.  Because these allegations fail to allege actionable wrongdoing, Varner will also be dismissed from this lawsuit.

Moslak and Dupont

Similarly, the Court will dismiss the claims against Defendants Moslak and Dupont, who are both Chief Hearing Examiners for the Pennsylvania DOC.  Plaintiff claims that these Defendants engaged in "sham" reviews of his misconduct appeals whereby they merely "rubber stamped" the determinations of guilt and did not engage in an independent review of the hearing examiner's findings.  ECF No. 11, ¶¶112-115.  These allegations are insufficient to establish personal involvement by Moslak or Dupont in any actionable misconduct because Plaintiff has no constitutional right to appellate review of his misconduct proceedings.  *See Powell v. McKeown*, No. 1:20-CV-348, 2020 WL 4530727, at *10-12 (M.D. Pa. Aug. 6, 2020) (claims against superintendent and chief hearing examiners dismissed for lack of personal involvement in the underlying procedural deficiencies, because they were not personally involved in the alleged due process violations and their failure to respond favorably to Plaintiff's appeals from the disciplinary proceedings was insufficient to hold them liable under § 1983); *Mutschler v. Tritt*, No. 3:14-CV-1611, 2018 WL 4184320, at *3 (M.D. Pa. Aug. 31, 2018) (defendants' review of prisoner's misconduct appeal did not establish personal involvement in alleged constitutional violations arising out of proceeding), aff'd, 765 F. App'x 653 (3d Cir. 2019); *Proctor v. Grafffus*, No. 3:16-CV-1666, 2018 WL 1334989, at *6 (M.D. Pa. Mar. 15, 2018) (holding that inmate could not establish liability on the part of PRC members based solely upon their respective administrative reviews of the finding of guilt reached at his disciplinary hearing) *aff'd sub nom. Proctor v. James*, 811 F. App'x 125 (3d Cir. 2020).

Schneck and Cross

The Court reaches a different conclusion with respect to Defendants Schneck and Cross, who were hearing examiners.  Each of these Defendants had direct participation in Plaintiff's

disciplinary proceedings in July and August of 2018.  ECF No. 11, ¶¶62-64, 80-84, 89-90, 93-95.

Plaintiff objects to the manner in which these proceedings were conducted, claiming that in each

instance he was arbitrarily denied an opportunity to present witnesses and/or was otherwise

subjected to unfair process. *Id*.  Assuming for the moment that Plaintiff can establish "atypical

and significant hardship" as a result of his disciplinary confinement, and further assuming that

this alleged liberty deprivation entitled Plaintiff to the procedural protections set forth in *Wolff*,

418 U.S. at 463-67 and *Hill*, 472 U.S. at 454-457, Plaintiff conceivably had the right to call

witnesses and present documentary evidence in his defense, provided these measures were

"consistent with institutional safety and correctional goals."  *Hill*, 472 U.S. at 454. Although his

allegations may be thin, Plaintiff has ostensibly pled a procedural due process violation to the

extent he can present facts to show that he was denied basic procedural protections in the course

of his disciplinary hearings. Of course, whether a prisoner's request to present witnesses and

evidence comports with "institutional safety and correctional goals" will depend upon the facts

of the case and may need to be re-evaluated on a more robust evidentiary record.  For present

purposes, however, Plaintiff may proceed with his claims against Schneck and Cross.  *See*

*Mutschler*, 2018 WL 4184320, at *3 (prisoner adequately pled personal involvement of hearing

examiner in alleged deprivation of due process where examiner personally presided over

prisoner's misconduct hearing and allegedly failed to investigate plaintiff's non-attendance at the

hearing; plaintiff claimed that hearing examiner's finding of guilt was based on an inadequate

record, as plaintiff had been denied the opportunity to present evidence and witnesses).

<u>Gill</u>

Defendant Gill was the RHU Captain and the "ranking official on duty" in the RHU

during times relevant to this lawsuit.  ECF No. 11, ¶6.  In pertinent part, Plaintiff avers that he

submitted a "request to staff member" to Gill on July 18, 2018, to which Gill never responded. ECF No. 71.  As discussed above, this type of conduct fails to establish Gill's personal involvement in any wrongdoing that Plaintiff was complaining of.

On June 15, 2019, Gill responded to Grievance No. 807018, the subject of which was alleged retaliatory conduct by Officers Wright and Mahoney, who had undertaken an inventory of Plaintiff's personal property while he was not present.  ECF No. 78, ¶¶40-46.  Gill allegedly "responded to the grievance . . . in a manner which was extremely vague, confusing, and evidence of a 'cover up' of staff misconduct, as is his custom." *Id*. ¶47.  Plaintiff acknowledges that Gill directed a re-inventory so that Plaintiff could be present; however, Gill was allegedly "negligent" in allowing the same two officers to conduct the re-inventory, resulting in Officers Wright and Mahoney confiscating over $500 worth of Plaintiff's commissary items. *Id*. ¶¶47-49. Notwithstanding Plaintiff's conclusory averment that Gill attempted to cover up staff misconduct, no actionable violation by Gill is shown by these averments.

Plaintiff also complains of Gill's inaction in response to Grievance No. 810777, wherein Plaintiff alleged a "campaign of harassment" by SCI-Forest officials in retaliation for his various grievances and for filing suit.  ECF No. 78, ¶¶62-63.  While acknowledging Plaintiff's allegation that Seigworth was still harassing him, Gill allegedly "failed to act on any information and allowed the retaliation and harassment to continue (and worsen)." *Id*.  Plaintiff alleges that Gill failed to separate Seigworth from him, despite knowing of Seigworth's harassing conduct. *Id*. The Court will allow Plaintiff's claim against Gill to proceed to the extent Plaintiff is alleging a pattern of prior retaliation on the part of Seigworth and Gill's acquiescence in that misconduct, which then continued.

Plaintiff also alleges Gill's personal involvement in moving a mentally ill inmate into his cell as a form of intentional "harassment."  ECF No. 52, 88-89.  To the extent Plaintiff is alleging retaliation on the part of Gill in response to Plaintiff's protected First Amendment conduct, he has sufficiently alleged Gills' direct involvement in the alleged wrongdoing.  His claim against Gill may proceed on that basis.

### 3.  Defendants Not Associated with Legal Claims

Finally, the DOC Defendants move to dismiss claims against Defendants Smith, Simon, Williams and Brocious on the grounds that these four individuals were identified as Defendants in the SAC but do not appear to be the subject of any claims.  The DOC Defendants request that Smith, Simon, Williams, and Brocious be terminated from the docket.

<u>Smith and Simon</u>

Defendant Smith is the Correctional Health Care Administrator ("CHCA") at SCI-Forest and Defendant Simon is the "Licensed Psychology Manager" ("LPM").  ECF No. 11, ¶¶18-19. Plaintiff alleges in his complaint that these Defendants "oversaw" a pattern or practice in which inmates on the active mental health roster, including Plaintiff, were "denied the opportunity to be evaluated by the facility 'LPM' or designee prior to having a misconduct hearing."  *Id*. ¶118. Specifically, Plaintiff alleges that Smith and Simon allowed mental health professionals to claim that inmates were declining their evaluations, when that was not the case.  *Id*. ¶119.

Based upon a liberal construction of the SAC, the Court perceives that Plaintiff is asserting a procedural due process claim related to the deprivation of a pre-disciplinary-hearing psychological evaluation.  *See* ECF No. 11, ¶119.  The assumption underlying this claim is that the provisions of DOC ADM-801 relative to pre-hearing psychological evaluations gives rise to a protected liberty interest in such examinations.  *Id*.  That assumption is misplaced, however.

34

"As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 2:20-CV-00135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases).  Thus, to the extent Plaintiff is asserting a due process claim based upon the Defendants' alleged violations of DOC ADM-801, the claim must be dismissed.  As this is the only putative claim against Smith, she is will be dismissed from this litigation.

As for Simon, Plaintiff elsewhere in his pleading appears to accuse Simon of unlawful retaliation, disability discrimination, and/or deliberate indifference in relation to an incident on June 7, 2019, when Plaintiff was placed in a "hard cell" after expressing suicidal ideations to Defendant Crissman and requesting mental health treatment.  *See* ECF No. 78 at ¶¶20-39. Plaintiff states that, despite being suicidal, he did not receive any mental health treatment for a period of four weeks following his placement in "Delta 6."  *Id.* ¶56.  He makes conclusory averments that: (i) the four-week delay in treatment is "attributable" to Defendant Simon (along with others), (ii) "all named defendants" knew or should have known of Plaintiff's mental health status as a "Stability C Code"; and (iii) [a] four (4) delay in mental health treatment, for a[n] inmate in solitary confinement, while suffering from diagnosed mental illnesses is deliberate indifference, cruel and unusual punishment, and a violation of the Americans with Disabilities Act."  *Id.*  Elsewhere, Plaintiff baldly alleges that Defendant Simon acted with the intent of punishing the plaintiff in retaliation for requesting mental health care.  ECF No. 78 at p. 28, ¶15. It is evident, however, that Simon's only alleged involvement in this incident is the fact that he provided an adverse initial response to Plaintiff's administrative grievance on the matter.  *Id.*, ¶33; *see also* ECF No. 52-1 at 4.  Any putative claims against Simon based on the events of June 7, 2019 and the ensuing delay in mental health treatment are therefore untenable as a matter of

law because Plaintiff has not pled facts to show Simons' personal involvement in any alleged wrongdoing.  Furthermore, Plaintiff's conclusory averments are not entitled to any presumption of truth.  Because no plausible claims have been pled as to Defendant Simon, he will be dismissed from this case.

## Williams

Defendant Williams is a hearing examiner who presided over Plaintiff's misconduct hearings on January 1, 2018 and January 17, 2018.  ECF No. 11, ¶¶16, 25.  As with the other named hearing examiners, Plaintiff alleges that Williams conducted an unfair hearing and, among other things, arbitrarily denied him the opportunity to call pertinent witnesses.  Under a liberal reading of the complaint, the Court assumes that Plaintiff is asserting a procedural due process claim against Williams.  For the reasons previously discussed with respect to the claims against Schenk and Cross, Plaintiff has adequately alleged Williams' personal involvement in a plausible constitutional violation.  This claim will therefore be permitted to proceed at this time.

## Brocious

Brocious is a corrections officer who worked in the RHU while Plaintiff was confined there.  ECF No. 11, ¶23.  Brocious was allegedly responsible for serving Plaintiff a copy of Misconduct No. B-925126 which, according to Plaintiff, was issued by Defendant J. Beatty for retaliatory reasons.  *Id*. ¶78.  Although Brocious executed a form indicating service of the misconduct, Plaintiff claims that Brocious falsified this form and never in fact served him with the misconduct or the related "witness request" and "inmate version" forms.  *Id*. ¶¶85-86.

To the extent Plaintiff is asserting a procedural due process claim against Brocious, the Court will permit this claim to proceed. The DOC Defendants have not yet substantively addressed these averments, and the Court is not presently in a position to fully evaluate

Plaintiff's procedural due process claims.  Accordingly, Defendants' motion to dismiss will be denied as it relates to any putative due process claims against Brocious.

B. <u>The Motion by Defendant Camacho</u>

The Court will next address the Rule 12(b)(6) motion filed by Defendant Camacho. Plaintiff's claims against Camacho arise out of the June 7, 2019 incident referenced above, wherein Plaintiff was placed in a "strip cell," and subsequently deprived of mental health treatment for a period of 28 days, while allegedly in a suicidal state.

As set forth in the Second Supplement to the SAC, Camacho is a psychiatrist who provided psychiatric treatment to inmates at SCI-Forest during times relevant to this lawsuit. ECF No. 78, ¶9.  Plaintiff has a Mental Health Stability "C" Code and has been on the active mental health roster since 2004.  *Id.* ¶21.  He has been diagnosed with bi-polar disorder and intermittent explosive disorder and has "anxiety/depression issues."  *Id.*

On June 7, 2019, while on administrative status and confined in the RHU, Plaintiff requested a psychological evaluation after reportedly experiencing suicidal ideations for several days.  ECF No. 78, ¶20.  Plaintiff informed Defendant "C. Crissman" (a member of the psychology staff) that he was having thoughts of self-harm.  *Id.* ¶22.  Crissman informed Plaintiff that he would contact Defendant Camacho regarding a psychiatric evaluation.  *Id.* ¶23. After briefly exiting the area, Crissman returned and informed Plaintiff that he would be taken to the medical department to see Camacho.  *Id.* ¶24.  However, Sgt. Kemp allegedly convinced Crissman and Camacho that Plaintiff's issues were "behavioral" and that Plaintiff did not need to see Camacho.  *Id.* ¶25.

At that point, contrary to DOC policy, Kemp and Crissman directed that Plaintiff be placed in a "strip cell" (identified as "Delta 6").  ECF No. 78, ¶26.  According to Plaintiff, the

door, walls, and lower vent of "Delta 6" were smeared with feces and urine, and the air vent blew odors of sewage into the cell whenever the fan was activated. *Id*. ¶27.  The cell was cold as the result of air conditioning and extra ventilation, it lacked hot water, and "flooding was occurring in the divider." *Id*. ¶¶31-32.  Upon being placed in "Delta 6," Plaintiff was given a paper smock and a blanket but was denied such amenities as soap, toilet paper, clothing, writing utensils, eye-glasses, and a toothbrush. *Id*. ¶30.

Plaintiff claims he was informed by Crissman that it was Camacho who directed his placement in the "Delta 6" strip cell.  ECF No. 78, ¶33.  Plaintiff further states that, contrary to DOC policy, he was never evaluated by Camacho prior to his placement in "Delta 6." *Id*. ¶28.

Plaintiff remained in "Delta 6" for five days, until June 11, 2019, when he was moved to a different "hard cell" at "Delta 11."  ECF No. 78, ¶¶34-35.  There, Plaintiff remained without receiving any form of mental health treatment until July 5, 2019, when he was visited by a member of the prison's psychology staff. *Id*. ¶38.  Plaintiff avers that the four-week delay in mental health treatment, at a time when he was mentally ill and was being held in solitary confinement, amounted to "deliberate indifference," "cruel and unusual punishment," and a violation of the Americans with Disabilities Act. *Id*. ¶56.  Elsewhere in his pleading, Plaintiff asserts that his treatment constituted unlawful retaliation. *Id*. ¶¶ 119, 121.  He also makes passing reference to a "Fourth Amendment" violation. *Id*. ¶121; *id*. at §(I) ¶1.

Having fully reviewed the Plaintiff's Second Supplement to the SAC, the Court will dismiss his claims under the ADA, the Fourth Amendment, and the First Amendment, to the extent such claims are directed against Camacho.  Here, Camacho is being sued only in his individual capacity, and as discussed above, claims under §202 of the ADA cannot be asserted against individual defendants. *See Kokinda*, 779 F. App'x at 942; *Bowens*, 674 F. App'x at 136;

*Matthews*, 613 F. App'x at 169-70; *Coit*, 2020 WL 4260765, at *12.  Moreover, Plaintiff

represents in his response to Camacho's motion that he is abandoning this claim.  The ADA

claim against Camacho will therefore be dismissed with prejudice.

Plaintiff vaguely alleges in the Second Supplement that Camacho and other Defendants

violated the Fourth Amendment, based upon alleged acts of retaliation. *See* ECF No. 78 ¶121; *id.*

at p. 25, ¶1.  The factual predicate for such a claim is not entirely clear but, in any event, Plaintiff

has not stated a plausible constitutional violation, given that "prisoners have no legitimate

expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches

[and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see*

*Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners

do not have a Fourth Amendment right to privacy in their cells.") (citing *Hudson*, 468 U.S. at

529).  Moreover, Plaintiff does not attempt to articulate the parameters of this claim in his brief

opposing Camacho's motion to dismiss; consequently, it appears that he is abandoning this

theory.  As no plausible Fourth Amendment violation has been pled, the Court will dismiss this

claim.

Plaintiff also has failed to allege a plausible First Amendment violation against Camacho

based upon his placement in the "Delta 6" cell.  To state a viable retaliation claim, Plaintiff must

show that (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action at

the hands of the Camacho; and (3) his constitutionally protected conduct was a substantial

motivating factor in Camacho's conduct. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002).

To allege the requisite causal link under the third prong, a plaintiff must typically allege either an

unusually suggestive temporal proximity between the protected First Amendment conduct and

the allegedly retaliatory action, or a pattern of antagonism coupled with timing.  *See Retzler v.*

*Phillips,* No. 19-CV-4890, 2019 WL 6726471, at *6 (E.D. Pa. Dec. 10, 2019) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) and *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)).  In his "Claims for Relief," Plaintiff alleges that Camacho and others engaged in a "Campaign of Harassment" against him, beginning on June 6, 2019 (the day he was placed in "Delta 6") "in retaliation for filing grievances/suits against SCI Forest prison officials . . .."  ECF No. 78, ¶121.  Plaintiff elsewhere asserts that the "Delta 6" placement was "likely retaliatory" because it "violated policy" and involved Sgt. Kemp and Dr. Simon, both of whom were prior subjects of Plaintiff's grievances.  *Id*. ¶119.  But nothing in his pleading plausibly suggests that Camacho was aware of, or motivated by, Plaintiff's prior grievances against Kemp, Simon, or other unidentified prison officials, nor has Plaintiff alleged that this activity occurred within close proximity to June 6, 2019.  In fact, Plaintiff states in his pleading that the grievance against Kemp was filed on July 13, 2018 -- nearly one year prior to his placement in "Delta 6."

To the extent Plaintiff claims that Camacho sought to punish him for seeking mental health treatment, *see* ECF No. 78, ¶36, the Court finds this conclusory averment insufficient to state a plausible retaliation claim.  *See Iqbal*, 556 U.S. at 678 (naked assertions devoid of further factual enhancement are insufficient to state a claim). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation and internal quotation marks omitted).  Here, it is theoretically possible that Camacho intended to retaliate

against Plaintiff for requesting mental health treatment, but it is not *plausible* based on the facts set forth in Plaintiff's pleading.

On the other hand, the Court will deny Camacho's motion to dismiss insofar is it concerns Plaintiff's Eighth Amendment "deliberate indifference" and "conditions of confinement" claims.  In the context of medical care, a prisoner can state an Eighth Amendment violation if he alleges acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).  The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health

and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination ... deprive inmates of the minimal civilized measures of life's necessities." *Id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer*, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Our Court of Appeals has recognized that "even though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020).

In any event, both types of Eighth Amendment claims involve fact-specific inquiries which, in the context of this case, are better suited to resolution on a more fully developed evidentiary record.  For present purposes, giving Plaintiff the benefit of all favorable inferences, the Court finds that he has alleged sufficient factual content to state plausible Eighth Amendment violations.  As set forth in the Second Supplement, Plaintiff claims to have a well-documented history of significant mental health problems, including bipolar disorder, anxiety and depression. He has alleged a serious psychiatric need for treatment to address suicidal ideations and thoughts of self-harm.  He states that his suicidal ideations were made known to Camacho but, contrary to established procedures, Camacho did not examine him before having him placed in an unsanitary "strip cell."  Plaintiff further claims that no mental health treatment was rendered for a period of 28 days thereafter, despite his suicidal ideations.  As described in the Second Supplement, the

conditions of "Delta 6" were extremely cold, despite the fact that Plaintiff was given only a smock to wear.  The conditions were also unsanitary, given the alleged presence of feces and urine on the cell door, walls and vent, and the odors of sewage that allegedly blew through the area when the smoke fan was activated. As discussed, Plaintiff claims he was placed in "Delta 6" for five days without toilet paper, soap, or a toothbrush.  He also appears to be claiming that the conditions of his confinement were detrimental to his already fragile mental health.  Although Plaintiff's averments are somewhat contradictory as to whether Camacho directed Plaintiff's placement in the "Delta 6" strip cell or whether Kemp and others were responsible for Plaintiff's placement there, those factual issues can be properly sorted out during the discovery process. The Defendants' penological reasons for Plaintiff's placement will also be better evaluated on a more developed record.  On balance, the Court is of the view that Plaintiff has pled at least minimally sufficient facts to support a theory that Camacho was deliberately indifferent to Plaintiff's serious psychiatric needs and/or a substantial risk to Plaintiff's health and safety when he allegedly directed Plaintiff's placement in the "Delta 6" cell and failed to follow up with any mental health treatment for a period of 28 days thereafter. Accordingly, Camacho's claim will be denied insofar as it relates to Plaintiff's Eighth Amendment §1983 claims.

## IV. FURTHER AMENDMENT

Generally, a court should provide a *pro se* plaintiff with leave to amend deficient claims, unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule).  Moreover, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

Based upon the facts stated in Plaintiff's SAC and supplemental pleadings, it does not appear that the claims the Court has identified as deficient are amenable to remediation through further amendment. To the extent any of Plaintiff's claims could be successfully re-pleaded, however, the Court finds that further amendment would be inequitable. Thus far, the Court has been extremely liberal in allowing Plaintiff to amend and supplement his claims with the goal of allowing Plaintiff a full and fair opportunity to air all of his grievances relative to his confinement at SCI-Forest. The result is an extremely lengthy and somewhat unwieldy tri-part pleading, with myriad overlapping claims and averments. Analyzing Plaintiff's claims has been no easy task and, given the stage of these proceedings, the Court finds that further amendment would be inequitable, as it would only lead to additional delay with the attendant risk of fading memories and potential loss of evidence. On the contrary, the Court believes that justice is best served at this point by moving the case toward discovery. To that end, the Court has taken a very generous approach in construing Plaintiff's claims. Accordingly, no further amendment of Plaintiff's pleading is warranted at this time.

## V. CONCLUSION

Based upon the foregoing reasons, the Court will grant the DOC Defendants' motion to dismiss relative to the following: (i) claims brought under the ADA and Rehabilitation Act; (ii) §1983 claims based upon substantive due process violations; (iii) §1983 claims based upon procedural due process violations arising out of Plaintiff's transfer to SCI-Greene and the resulting delay in Plaintiff's completion of certain prison programs; (iv) §1983 claims alleging procedural due process violations in connection with the destruction of Plaintiff's personal property; (v) §1983 claims alleging procedural due process violations arising out of interference with administrative grievance procedures; (vi) §1983 claims alleging violations of the Equal

Protection Clause under a "class of one" theory; (vii) §1983 claims alleging a denial of Plaintiff's right to access the courts; (viii) §1983 claims alleging equal protection and/or Fourth Amendment violations in connection with repeat body scans; (ix) §1983 claims alleging Fourth Amendment violations in connection with the confiscation of Plaintiff's legal materials; (x) §1983 claims seeking monetary damages against the DOC Defendants in their official capacities; (xi) §1983 claims asserted against Defendants Oberlander, Reeher, Varner, Moslak, Dupont, Smith and Simon; and (xii) §1983 claims asserted against Defendants Wetzel, Overmyer, Sawtelle, Schneck, Cross, Gill, Williams, and Brocious, except as authorized herein.  In all other respects, the DOC Defendants' motion will be denied without prejudice to the Defendants' right to raise such challenges at the Rule 56 stage as future circumstances may warrant.

The Court will grant Defendant Camacho's motion to dismiss insofar as it relates to Plaintiff's claims under the ADA, Plaintiff's §1983 claims alleging Fourth Amendment violations, and Plaintiff's §1983 claims alleging First Amendment retaliation claims.  The motion will be denied relative to Plaintiff's §1983 claims alleging violations of his Eighth Amendment rights.  The denial will be without prejudice to Defendant Camacho's right to raise such challenges at the Rule 56 stage as future circumstances may warrant.

An appropriate Order follows.


_Susan Paradise Baxt_

Susan Paradise Baxter
United States District Judge

cc:    SHAVEZ HOLDEN
       EF-5888
       SCI Greene
       169 Progress Drive
       Waynesburg, PA 15370
       (by U.S. mail)

       Counsel of record
       (by CM/ECF)